IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

      v.                                                                                               18-CR-140-A

DANIEL VILLAFANE-LOZADA

                Defendant.

---

## GOVERNMENT'S RESPONSE TO THE
## DEFENDANT'S SENTENCING MEMORANDUM

**THE UNITED STATES OF AMERICA**, by and through its attorney, James P. Kennedy Jr., United States Attorney for the Western District of New York, and the undersigned Special Assistant United States Attorney, respectfully files this sentencing memorandum.

### I.    PRELIMINARY STATEMENT

On November 15, 2018, the defendant appeared before the Court and pled guilty to a one-count Information, which charged a violation of Title 18, United States Code, Sections 2252A(a)(5)(B) and 2252A(b)(2) (possession of child pornography involving a prepubescent minor). The Presentence Report ("PSR") consistent with the plea agreement, determined that the defendant, with a total adjusted offense level of 33 and criminal history category of I, faces a guideline range of 135 to 168 months of imprisonment. This memorandum is submitted in support of the government's request that the defendant be sentenced within the higher end of the statutory guideline range of 135 to 168 months.

## II. STATEMENT OF FACTS

The government concurs with and relies on the statement of facts outlined in the PSR at paragraphs 12 through 53.

## III. SENTENCING PROCEDURE

The Supreme Court in United States v. Booker, 543 U.S. 220 (2005), excised Section 3553(b)(1) from the Sentencing Reform Act, which had strictly limited sentencing judges' discretion to the mandatory regime of the Sentencing Guidelines and Guidelines departures. Booker, 543 U.S. at 234, 236. Today, after considering the Guidelines and all the applicable purposes of sentencing in Section 3553(a) of Title 18, a sentencing judge is required to decide whether to impose a Guidelines or non-Guidelines sentence. United States v. Crosby, 397 F.3d 103, 113 (2d Cir. 2005).

Title 18, United States Code, Section 3553(a) requires that this Court "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in [18 U.S.C. § 3553(a)(2)]." In determining the sentence, this Court must consider the following:

1. the nature and circumstances of the offense and the history and characteristics of the defendant;

2. the need for the sentence imposed –

    a. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    b. to afford adequate deterrence to criminal conduct;

    c. to protect the public from further crimes of the defendant; and

- d. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3. the kinds of sentences available;

4. the kinds of sentence and the sentencing range established for –

    a. the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –

        i. issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

        ii. that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

    b. in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

5. any pertinent policy statement –

    a. issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

    b. that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

6. the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

7. the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

In executing these statutory responsibilities, the Court must first correctly calculate the applicable Guidelines range. Gall v. United States, 552 U.S. 38, 128 S. Ct. 586, 596 (2007). This range is "the starting point and the initial benchmark." Id. As the Second Circuit held, "[t]he Guidelines range . . . represents the Sentencing Commission's considered opinion about what the sentence should be in an 'ordinary' case, and therefore serves as the district court's 'starting point' in selecting a sentence. The § 3553(a) factors, in turn, provide the sentencing judge with a set of criteria for potential variances, based on 'the nature and circumstances of the offense and the history and characteristics of the defendant.'" United States v. Dorvee, 616 F.3d 174, 182 (2d Cir. 2010). Although this Court must treat the Guidelines as advisory, United States v. Ratoballi, 452 F.3d 127, 131-32 (2d Cir. 2006), an error in determining the applicable Guideline range or the availability of departure authority nonetheless would be the type of procedural error that could render a sentence unreasonable on appellate review. United States v. Selioutsky, 409 F.3d 114, 118 (2d Cir. 2005); United States v. Cavera, 550 F.3d 180, 190 (2d Cir. 2008) (en banc) (a district court commits procedural error where it fails to calculate the Guidelines range, makes a mistake in its Guidelines calculation, or treats the Guidelines as mandatory).

While this Court "does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply," Rita v. United States, 551 U.S. 338, 127 S. Ct. 2456, 2465 (2007), neither are sentencing judges "free to ignore the Guidelines, or to treat them merely as a 'body of casual advice.'" Cavera, 550 F.3d at 189, quoting United States v. Crosby, 397 F.3d 103, 113 (2d Cir. 2005); see also United States v. Jones, 531 F.3d 163, 174 (2d Cir. 2008)

("respectful consideration of the Guidelines . . . necessarily channels district court sentencing discretion"). Further, the Second Circuit has observed that "in the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be [upheld as] reasonable in the particular circumstances." United States v. Fernandez, 443 F.3d 19, 27 (2d Cir. 2006). See also United States v. Eberhard, 525 F.3d 175, 179 (2d Cir. 2008).

Next, after giving the parties an opportunity to argue for whatever sentence they deem appropriate (consistent with any limitations imposed by the plea agreement), this Court must then "consider all the § 3553(a) factors to determine whether they support the sentence requested by a party." Gall, 128 S. Ct. at 596. In determining whether the § 3553(a) factors support the requested sentence, the Court "must make an individualized assessment based on the facts presented." Id., at 597. In that regard, "[n]o limitation shall be placed on the information concerning the background, character and conduct of a person convicted of an offense which a court . . . may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. See Cavera, 550 F.3d at 190-91. If a non-Guidelines sentence is warranted, the Court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." Gall, 128 S. Ct. at 597.

After settling on the appropriate sentence, the Court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." Id., citing Rita, 127 S. Ct. at 2456. Although this Court need not engage in "robotic incantations" with respect to its consideration of the § 3553(a) factors, Fernandez, 443 F.3d at 30, "[t]he sentencing judge should set forth enough to satisfy the appellate court

that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision making authority." Rita, 127 S. Ct. at 2468. Further, "a district court imposing a non-Guidelines sentence . . . should say why she is doing so, bearing in mind . . . that 'a major departure [from the Guidelines] should be supported by a more significant justification than a minor one.'" Cavera, 550 F.3d at 193 (quoting Gall, 128 S. Ct. at 197 (ellipses added, brackets in original)).

## IV.   ARGUMENT

The government respectfully submits that a guideline sentence of imprisonment provides the proper punishment for the offense of conviction. As set forth below, a statutory guideline sentence within the higher end of the 135 to 168 month guideline range is sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553(a).

### A.   Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

Pursuant to 18 U.S.C. § 3553(a)(1), in determining the particular sentence to be imposed, the Court shall consider "the nature and circumstances of the offense and the history and characteristics of the defendant." Initially, the nature and circumstances of the offense involve the defendant's possession of child pornography which involved prepubescent minors under twelve years of age, some of which involved sexual abuse or exploitation of an infant or toddler. PSR ¶ 59. Moreover, as part of the relevant conduct of the offense, the defendant admitted to engaging in sexual contact with two minor victims, which provides a five level increase pursuant to Guidelines Section 2G2.2(b)(5) (the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor). PSR ¶ 60. The defendant's history and characteristics reveal that the defendant has had a sexual attraction to minors

since he was in middle school, and that he has actually engaged in sexual contact with minors throughout his life. PSR ¶¶ 20-38. As discussed in more detail, the serious nature of the offense charged as well as the history and characteristics of the defendant strongly weigh in favor of a guideline sentence.

**1. The Defendant's Possession of Child Pornography:**

The defendant possessed eighteen images of child pornography on a LG Smart Phone and twenty-two images and thirty videos of child pornography on a Toshiba Micro 4G SD Card. PSR ¶ 16. He admitted that, in total, he downloaded approxaitmely 300 images of child pornography, but that he regularly deleted the pornography after masturbating to it. PSR ¶ 47. The defendant did not accidentally stumble upon these images and videos of child pornography, but intentionally sought them out, masturbated to the images and videos, and maintained the majority of his collection on an SD card. The defendant explained that he used social media companies including "Kik" and "Grindr", and also used the dark web, to find, view, receive, and distribute child pornography. PSR ¶ 18.

Some of the child pornography possessed by the defendant included male toddlers and children under the age of twelve. PSR ¶ 48. For example, one of the images of child pornography possessed by the defendant involved an adult inserting his penis into a three-year-old child's anus. PSR ¶ 49. Additionally, the defendant possessed a video which depicted an adult male anally penetrating a three-year-old child. PSR ¶ 48. The nature of the child pornography possessed by the defendant represents an aggravating factor that the Court should consider at the time the sentence is imposed. The National Center for Missing and Exploited Children determined that the defendant possessed three image files of three minors

who were previously identified by law enforcement. PSR ¶ 52. In seeking a guidelines sentence, the government urges the Court to consider the seriousness of the criminal conduct to which the defendant pleaded guilty.

In a child pornography case, the primary victims are the children depicted in the images possessed by the defendant. See United States v. Shutic, 274 F.3d 1123, 1126 (7th Cir. 2001); United States v. Sherman, 268 F.3d 539, 547-48 (7th Cir. 2001). As the Sherman Court noted, "child pornography directly victimizes the children portrayed by violating their right to privacy." Id. At 547. As the Court noted in Shutic, "children ... suffer profound emotional repercussions from a fear of exposure, and the tension of keeping the abuse a secret." Shutic, at 1126. (citations omitted). Congress acknowledged the harm done to victims portrayed in child pornography in the recently enacted "Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018":

> The demand for child pornography harms children because it drives production, which involves severe child sexual abuse and exploitation . . . The harms caused by child pornography begin, but do not end, with child sex assault because child pornography is a permanent record of that abuse and trafficking in those images compounds the harm to the child . . . The unlawful collective conduct of every individual who reproduces, distributes, or possesses the images of a victim's childhood sexual abuse plays a part in sustaining and aggravating the harms to that individual victim.

Pub. L. 115-299.

Additionally, counsel's reliance on United States v. Dorvee, 616 F.3d 174 (2d Cir. 2010) and United States v. Jenkins, 854 F.3d 181 (2d Cir. 2017) for the proposition that Section 2G2.2 is unduly harsh and "irrational" is misplaced in this case. See Defendant's Sentencing Memorandum pgs. 3-5. In the instant matter, unlike Dorvee and Jenkins, the advisory range under the United States Sentencing Guidelines is not near or exceeding the

statutory maximum of 240 months. See United States v. Dorvee, 616 F.3d at 186 (Court held that a 240 month sentence of incarceration was substantively unreasonable); United States v. Jenkins, 854 F.3d at 184 (Court held that a sentence of 225 months of incarceration substantively unreasonable). The defendant's guideline range of 135 to 168 months is eminently reasonable for his actions and does not reach or exceed the 240 month maximum sentence addressed in Dorvee and Jenkins. While Dorvee advised district courts to exercise caution in imposing sentences for child pornography offenses at or near the statutory maximum "in run-of-the-mill cases," this is not a run-of-the-mill case. Dorvee, 616 F.3d at 186. The facts of this case are completely distinguishable from Dorvee and Jenkins, as further discussed below, See infra Part IV.A.2., which further emphasizes that a sentence within the high end of the statutory guideline range accounts for the defendant's relevant conduct, history, and characteristics.

**2. The Defendant's Sexual Abuse of Minor Victims:**

Part of the relevant conduct for the plea included the defendant's sexual contact with two minor victims. Unlike in Dorvee, where the Court found that "Dorvee appears to have been punished as though he already had, or would, sexually assault a child, despite medical testimony to the contrary and Dorvee's lack of any such criminal history," in the instant matter, the defendant actually engaged in sexual contact with at least two minor male victims. See United States v. Dorvee, 616 F.3d 174, 184 (2d Cir. 2010). Therefore, defendant's reliance on Dorvee that the 2G2.2 guidelines are unduly harsh is not applicable to the case at issue. Defendant's Sentencing Memorandum pgs. 3-5.

Similarly, defendant's reliance on United States v. Jenkins, where the court found that Section 2G2.2 could not "bear the weight assigned to it" where the defendant never "contacted or attempted to contact a child or…engaged in any 'sexually dangerous behavior' separate from his crimes of conviction," is also misplaced. United States v. Jenkins 854 F.3d 181,190 (2d Cir. 2017). To the contrary, in the instant matter, the defendant did in fact successfully contact and engage in sexually dangerous behavior with multiple minor victims. Courts have similarly disregarded the analysis in Dorvee and Jenkins in the child pornography-sentencing context when there is evidence of hands on abuse. See e.g. United States v. Oehne, 698 F.3d 119, 125 (2d Cir. 2012) (finding that "Dorvee is readily distinguishable from this case" since "[u]nlike the defendant in Dorvee, Oehne actually sexually assaulted a child."). For that reason, Dorvee and Jenkins are completely distinguishable from the case at hand and have no bearing on the case at issue.

A sentence within the higher end of the guideline range is more than warranted due to the defendant's sexual interest in minors and his actual sexual contact with minor victims. The defendant admitted to his sexual interest in children and his hands on sexual contact with minors during a polygraph examination conducted by HSI agents. In particular, the defendant admitted that his "primary sexual interest was minor males approximately 8-years-old." PSR ¶ 19. According to the defendant, he had a sexual interest in children as early as when he was in middle school. PSR ¶ 20. Specifically, the defendant admitted that when he was in middle school, he attempted to engage in sexual contact with an eight year old child from his neighborhood, "that he and the boy touched each other sexually", and that he "attempted to perform oral sex on the boy." PSR ¶ 20.

The defendant's sexual attraction to children did not subside once he became an adult. At the age of nineteen, the defendant met a fourteen year-old male (Minor Victim 2) by placing an ad on Craigslist looking for someone who may be interested in "having fun." PSR ¶ 29. Although the defendant was aware of the minor's age when he was communicating with him, he continued to communicate with the minor male through e-mail and social media networks. PSR ¶ 29. Eventually, the defendant met up with the minor victim on multiple occasions—at a park and an abandoned warehouse—and engaged in oral and anal sexual conduct with him. PSR ¶¶ 30-31. The defendant admitted that at the time, he knew that having sexual contact with anyone under the age of eighteen was illegal. PSR ¶ 34. Nevertheless, the defendant engaged in sexual contact with the minor anyway.

When the defendant was twenty-one years of age, the defendant sought out, and engaged in sexual contact with, another minor victim (Minor Victim 1), who was approximately fifteen years old at the time. PSR ¶ 21. After meeting on the social networking site "Grindr", the defendant continued to communicate with Minor Victim 1 and engaged in sexual chat with him. PSR ¶¶ 22-27. These conversations eventually led to multiple instances of hands on sexual contact with this minor victim. PSR ¶ 21-23. On at least three occasions, the defendant traveled to Minor Victim 1's home and the defendant engaged in oral and anal sexual conduct with the minor victim. PSR ¶ 21-23.

The defendant further admitted during the polygraph examination that, approximately six months prior to his arrest for the instant offense, he was having discussions with an unknown adult male regarding engaging in sexual conduct with an eight-year-old male child. PSR ¶¶ 39-40. The defendant admitted to agents that this unknown adult male told the defendant that he babysat an eight-year-old male child. The adult male advised the defendant

that he and the defendant could take the eight year old child to a cabin approximately one hour away from Buffalo, New York, where he and the defendant could drug the minor and engage in sexual contact with the minor. PSR ¶ 40. The defendant further admitted that they planned on a particular date to engage in this sexual contact with the minor. PSR ¶¶ 40-41. On that date, the defendant was waiting for the adult male to pick him up in his vehicle, but that the unknown adult male never arrived. PSR ¶ 41. This reveals that the defendant was adamant about fulfilling his urges of engaging in sexual contact with an eight-year-old child. Even more disturbing, additional "Text Now" messages were recovered in which the defendant bragged about engaging in oral sexual conduct with an eight-year-old child. PSR ¶ 43.

The history and characteristics of the defendant reveal that the defendant has a sexual attraction to minors, that he has engaged in sexual contact with minors on multiple occasions, that he has a preference for eight year old children, and that he attempted to engage in sexual contact with an eight year old male approximately six months prior to his arrest for the instant offense. The guidelines account for the history and characteristics of the defendant by providing enhancements to the base offense level based on a defendant's pattern of activity involving the sexual abuse or exploitation of a minor pursuant to U.S.S.G. § 2G2.2(b)(5). The defendant relies heavily on <u>Jenkins</u> and <u>Dorvee</u> in his sentencing memorandum, arguing that the guidelines pursuant to Section 2G2.2 are too harsh. Defendant's Sentencing Memorandum pgs. 3-5. However, as discussed, the defendants associated with those particular cases never engaged in sexual contact with minor victims, thus differing significantly from the circumstances here. The defendant did much more than simply possess child pornography. The facts of this case could not be any more different from <u>Jenkins</u> and

Dorvee. The defendant's argument that the child pornography guidelines should be ignored in the present case is without merit. Consequently, the aggravating factors present in this case warrant a sentence within the higher end of the guideline range of 135 to 168 months.

**B.      The Need to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense**

Pursuant to 18 U.S.C. § 3553(a)(2)(A), the Court should consider how the sentence fashioned reflects the seriousness of the offense. In other words, this subsection is designed to ensure that the "punishment fits the crime." In order to achieve this end, the Court should consider both the objective harm of the offense and the subjective culpability of the offender himself.

In the instant matter, the defendant's actions not only continued to perpetuate the victimization of those children in the images and videos of child pornography in his possession, but he also caused harm to multiple minor victims—a fourteen and fifteen year old male—by engaging in oral and anal sexual conduct with them when he was an adult. PSR ¶¶ 21-38. Remarkably, the defendant explains that one of the significant reasons for why he engaged in the offense at hand is due to his own abuse when he was a minor and how that has affected his life. Defendant's Sentencing Memorandum pgs. 6-8. If that is the case, then the defendant knows better than anyone the impact that his actions had, and will continue to have, on not only those portrayed in the child pornography that he possessed, but on the two minor victims with whom he engaged in sexual contact. As previously mentioned, the guidelines account for this type of behavior by including the enhancement pursuant to Section 2G2.2(b)(5) regarding the pattern of activity involving the sexual abuse or exploitation of a minor. This five-point enhancement is utilized in order to appropriately reflect the seriousness

of the offense at issue, take into account the activity of sexual abuse of minors in which the defendant engaged, and provide just punishment for the offense.

Additionally, the defendant admitted that when he obtained these images of child pornography, after masturbating to them, he would "regularly" delete them. PSR ¶ 47. He deleted these images of child pornography because he knew that it was wrong to obtain them, but he made a conscious decision to violate the law anyway. The defendant made a conscious decision to seek out and obtain child pornography, which further perpetuated the harmful effects that child pornography has on its victims. See United States Sentencing Commission, 2012 Report to the Congress: Federal Child Pornography Offenses Report, ch. 12, pp. 311-12, (available at http://www.ussc.gov/research/congressional-reports/2012-report-congress-federal-child-pornography-offenses, last accessed June 18, 2019) (reaffirming that all child pornography offenses perpetuates the harm to the victims depicted in the images and fuels a market for the production of such images). As explained in Sherman, "child pornography directly victimizes the children portrayed by violating their right to privacy, and in particular violating their individual interest in avoiding the disclosure of personal matters." United States v. Sherman, 268 F.3d 539 (7th Cir. 2001). This a serious offense and the defendant should receive a just punishment for his actions.

Moreover, when first encountered by police, the defendant was asked whether he engaged in any sexual acts with minors when he was an adult, and he initially replied in the negative to officers. PSR ¶ 17. He initially provided a misstatement to law enforcement because he knew that engaging in sexual contact with minors was wrong. However, he did it anyway. Shockingly, the defendant went so far as to arrange for an opportunity to drug and engage in sexual contact with an eight-year old child. PSR ¶ ¶ 40-41 He bragged via online

chat about sexually abusing an eight-year old. PSR ¶ 43. The defendant's possession of child pornography involving toddlers in combination with his planning to sexually abuse an eight-year-old child further emphasizes the defendant's predilection for very young children. These disclosures by the defendant are deeply distributing, which leads the government to believe that the defendant is a serious threat to the safety of the public. This offense could not be any more serious. All of this behavior reflects the defendant's complete disregard for the law, along with the well-being of minors in the community, when it comes to satisfying his own sexual urges.

Given the defendant's complete lack of respect for the law and his lack of respect for others when it comes to satisfying his own sexual urges, in conjunction with the need for a sentence to account for the defendant's conduct and the need under 3553(a)(2)(A) for a sentence to promote respect for the law, a guideline sentence is especially appropriate for the defendant. There are no extraordinary characteristics of the defendant that suggest that a guideline sentence would be unreasonable.[1] Additionally, a guideline sentence will not only reflect the seriousness of the offense, but also provide just punishment for the offense at issue.

---

[1] In most cases in which a defendant requests a non-guideline sentence, the court has before it some evidence that the particular defendant was involved in his community, had served his county in the military, or had led an otherwise exemplary life. See United States v. Hanson, 561 F.Supp.2d 1004, 1007 (E.D.Wis. 2008) (defendant "held a funeral director's license and operated a funeral home for over twenty years, taking over the business from his father. He appeared to have been a successful and well-respected businessman."); United States v. Taylor, 2008 WL 2332314, *1-2 (S.D.N.Y. June 2, 2008) (the defendant had "excelled academically," graduated from the "prestigious Bronx High School of Science," served in the United States Navy for over four years, and received numerous commendation medals); and United States v. Grinbergs, 2008 WL 4191145, *9 (D. Neb. Sept. 8, 2008) (defendant had "served in the Army Reserve and was discharged honorably."). In the present case, there does not appear to be any evidence before this Court to suggest that the defendant has any of these equities. The defendant has no military service, limited community involvement, and has a limited, unverified, employment history. PSR ¶¶ 103-113.

Consequently, the government respectfully submits that a sentence within the higher end of the guideline range is appropriate given these factors.

**C.     The Need to Afford Adequate Deterrence**

Pursuant to 18 U.S.C. § 3553(a)(2)(B), the Court should consider whether a sentence affords adequate deterrence. Unlike other sentencing considerations, the goal of deterrence is not to punish for the crime at hand, but to achieve a practical end for the future—namely the prevention of crime. Deterrence can be both specific to the defendant or general to the public. As one court explained: "[s]pecific deterrence is meant to disincline individual offenders from repeating the same or other criminal acts. . . [while] [g]eneral deterrence attempts to discourage the public at large from engaging in similar conduct." United States v. Blarek, 7 F. Supp. 2d 192, 210 (E.D.N.Y.), aff'd, 166 F.3d 1202 (2d Cir. 1998) (internal citations omitted).

Here, the defendant's hands on sexual abuse of minors, as already set forth above, bears on the defendant's risk of recidivism. In Dorvee, the Second Circuit held that the defendant's sentence was procedurally and substantively unreasonable where the district court's failure to justify "why the maximum available sentence, as opposed to some lower sentence, was required to deter an offender like Dorvee" based on the district court's unsupported finding that the defendant was likely to sexually abuse a child. Dorvee, 616 F.3d at 183-184. Due to the defendant's hands on abuse, a sentence within the higher range of the guidelines is necessary to deter an offender like the defendant from engaging in similar criminal conduct in the future. The government has set forth information that the government believes is relevant to sentencing in this action in order to deter the defendant from engaging in future criminal behavior, and based on that information, submits that a sentence within the

higher guideline range of 135 to 168 months is appropriate to provide deterrence. The guideline ranges for possession of child pornography and its enhancements exist because general deterrence is a primary aim of sentencing for this kind of conduct. Except for a sentence of incarceration, there would be nothing to deter this defendant and other individuals similarly in his position who were convicted of such serious crimes to engage in this behavior in the future. The defendant's actions of possessing child pornography and engaging in a pattern and practice of sexual abuse of multiple minors directly harmed the lives of a number of known victims, as well as countless other unknown victims and family members.

A sentence that is too lenient will undermine any deterrent effect for this particular defendant. While the guideline sentence is a significant one, it is justifiable as necessary to deter this particular defendant from violating this very same crime in the future. Arguably, this factor weighs heaviest in favor of a guidelines sentence for the defendant.

## V.    Conclusion

For the aforementioned reasons, the government respectfully requests that this Court impose a sentence within the high end of the statutory guideline range of 135 to 168 months.

**Dated:** Buffalo, New York, June 19, 2019

                                             JAMES P. KENNEDY, JR.
                                             United States Attorney

BY:   s/ JEREMY MURRAY
       Assistant United States Attorney
       United States Attorney's Office
       Western District of New York
       138 Delaware Avenue
       Buffalo, New York 14202
       (716) 843-5831
       jeremy.murray@usdoj.gov