1    **UNITED STATES DISTRICT COURT**
     **WESTERN DISTRICT OF NEW YORK**
2

3

4    UNITED STATES OF AMERICA,         )
                                       ) Case No. 1:18-CR-00140
5                                      )              (RJA)(HKS)
                      Plaintiff,       )
6                                      )
     vs.                               ) June 26th, 2019
7                                      )
     DANIEL VILLAFANE-LOZADA,          )
8                                      )
                      Defendant.       )
9

10                   **TRANSCRIPT OF SENTENCING**
11         **BEFORE THE HONORABLE RICHARD J. ARCARA**
              **SENIOR UNITED STATES DISTRICT JUDGE**
12

13
     <u>APPEARANCES:</u>
14
     For the Plaintiff:    JAMES P. KENNEDY, JR., ESQ.
15                         UNITED STATES ATTORNEY
                           BY:  JEREMY MURRAY, ESQ.
16                         ASSISTANT UNITED STATES ATTORNEY
                           138 Delaware Avenue
17                         Buffalo, NY 14202

18   For the Defendant:   FEDERAL PUBLIC DEFENDER'S OFFICE
                           BY:  JEFFREY BAGLEY, ESQ.
19                         300 Pearl Street, Suite 200
                           Buffalo, NY 14202
20
     Court Reporter:       MEGAN E. PELKA, RPR
21                         Robert H. Jackson Courthouse
                           2 Niagara Square
22                         Buffalo, NY 14202

23

24

25

01:12PM    1    THE CLERK:  Criminal action 2018-140A.  United States

01:12PM    2    vs. Daniel Villafane-Lozada.  Sentencing.  Counsel, please

01:12PM    3    state your name and the party you represent for the record.

01:12PM    4    MR. MURRAY:  Good afternoon, Your Honor.  Jeremy

01:12PM    5    Murray on behalf of the United States.

01:12PM    6    MR. BAGLEY:  Good evening, Judge.  Jeffrey Bagley for

01:12PM    7    Mr. Villafane-Lozada.

01:12PM    8    THE COURT:  Good afternoon.  Sorry we're running a

01:12PM    9    little late here.

01:12PM   10    MR. BAGLEY:  No problem, Judge.

01:12PM   11    THE COURT:  Are we ready?

01:12PM   12    MR. BAGLEY:  Yes.

01:12PM   13    THE COURT:  Government is ready?

01:12PM   14    MR. MURRAY:  Yes, Your Honor.

01:13PM   15    THE COURT:  The defendant stands before the Court for

01:13PM   16    sentencing on his previous plea of guilty to one count of

01:13PM   17    possession of child pornography involving a prepubescent minor

01:13PM   18    in violation of Title 18, United States Code, Section

01:13PM   19    2252A(a)(5)(B) and 2252A(b)(2).  I know counsel reviewed the

01:13PM   20    report.  I assume, Mr. Bagley, you reviewed that with your

01:13PM   21    client?

01:13PM   22    MR. BAGLEY:  Yes, Judge.

01:13PM   23    THE COURT:  The Court hereby accepts the terms and

01:13PM   24    conditions of the plea agreement and the plea of guilty.  I

01:13PM   25    will place the report in the record under seal.  If an appeal

01:13PM 1 is filed, counsel on appeal will be permitted access to the

01:13PM 2 report, except counsel on appeal will not be permitted access

01:13PM 3 to the recommendation section.

01:13PM 4     The parties have filed the appropriate statement of

01:13PM 5 parties with respect to sentencing factors.  There's no

01:13PM 6 dispute about the facts in the report and therefore, the Court

01:13PM 7 adopts those facts as its findings of fact and hereby

01:14PM 8 incorporates them into the record.

01:14PM 9     There are no objections to the probation officer's

01:14PM 10 conclusions as to the applicable guidelines.  The Court

01:14PM 11 recommends that the defendant's base offense level under

01:14PM 12 Guideline Section 2G2.2(a)(1) is 18.  The report also

01:14PM 13 recommends a two-level upward adjustment pursuant to Guideline

01:14PM 14 Section 2G2.2(b)(2), as the instant offense involved material

01:14PM 15 of a prepubescent minor under the age of 12.

01:14PM 16     The report also recommends a four-level upward

01:14PM 17 adjustment pursuant to 2G2.2(b)(4), as the offense involved

01:14PM 18 material that portrayed sexual abuse of an infant or a

01:14PM 19 toddler.  The report also recommends a five-level upward

01:14PM 20 adjustment pursuant to 2G2.2(b)(5), as the defendant engaged

01:14PM 21 in a pattern of activity involving a sexual abuse of a minor.

01:14PM 22     The report also recommends a two-level upward

01:14PM 23 adjustment, pursuant to 2G2.2(b)(60, as the instant offense

01:15PM 24 involved the use of a computer.  The report also recommends a

01:15PM 25 five-level upward adjustment pursuant to 2G2.2(b)(7)(D), as

01:15PM 1 the offense involved 600 or more images. The report also

01:15PM 2 recommends a two-level downward adjustment for acceptance of

01:15PM 3 responsibility and accordingly recommends the offense level

01:15PM 4 should be properly calculated at level 33, with a criminal

01:15PM 5 history category of I, with an advisory range of 135 to 168

01:15PM 6 months.

01:15PM 7 The statutory term of imprisonment is a maximum of

01:15PM 8 20 years. The advisory range for a supervised release is a

01:15PM 9 term of five years to life. The advisory range for a fine is

01:15PM 10 35,000 to $250,000, plus the cost of imprisonment and

01:15PM 11 supervised release or community confinement or home

01:15PM 12 confinement and probation.

01:15PM 13 In accordance with the Supreme Court decision, *U.S.*

01:15PM 14 *v. Booker* and the Second Circuit decision, *U.S. v. Crosby*, the

01:16PM 15 Court must consider the guidelines, is not bound by them. The

01:16PM 16 Court must also consider the factors in 18 U.S.C. 3553(a).

01:16PM 17 Now, I have received six letters on behalf of the

01:16PM 18 defendant, some medical records and a sentencing memorandum on

01:16PM 19 behalf of the defendant, as well as a memorandum from the

01:16PM 20 government. I believe that pretty much sets forth the

01:16PM 21 parameters here. Mr. Bagley?

01:16PM 22 MR. BAGLEY: Thank you, Judge. I think there's two

01:16PM 23 questions in every sentencing that the Court and the public

01:16PM 24 want answered. Those two questions are: Why did the

01:16PM 25 defendant, my client in this case, Daniel, commit this crime?

01:16PM  1  And then, two, is he going to commit a crime like this again

01:16PM  2  in the future?

01:16PM  3          As I tried to explain in my memorandum as to why I

01:16PM  4  think he committed this crime, Daniel is not unlike many

01:16PM  5  clients of mine -- and I'm sure defendants before this Court

01:17PM  6  charged with and convicted of crimes like these -- in that he,

01:17PM  7  himself, was a victim of a similar crime when he was a young

01:17PM  8  man, when he was a boy, five years old.

01:17PM  9          And for whatever reason, Judge -- and I'm not a

01:17PM 10  psychologist -- I do quote from Dr. Heather Wood, who tries to

01:17PM 11  explain this, Judge, it does, for whatever reason, hardwire

01:17PM 12  the brain in some way to make it more likely that someone, a

01:17PM 13  victim of a crime, is going to be later on accused of a crime

01:17PM 14  and convicted of a crime like this, Judge.

01:17PM 15          And the sad thing about a lot of these cases, and

01:17PM 16  it's no different for Daniel, is that he's ashamed of it.  He

01:17PM 17  doesn't tell anybody about it and so he doesn't get any

01:17PM 18  treatment for it.  And so, he leads his whole life, as his mom

01:17PM 19  attests to -- he didn't even tell his own mother -- he leads

01:17PM 20  his whole life kind of unable to deal with it, unable to grasp

01:18PM 21  it, unable to fight back those demons, Judge, until now.

01:18PM 22  Until now.

01:18PM 23          And I've got about 200 pages of records from Niagara

01:18PM 24  County Jail.  I cited some of them in my papers.  And he's

01:18PM 25  seen probably once a month by Dr. Cervantes, a psychologist.

01:18PM  1   He's seen by nurses and mental health staff at the jail on

01:18PM  2   almost a day-to-day basis, especially at the beginning.

01:18PM  3   Judge, this case is about a year old, maybe a little bit

01:18PM  4   longer.  And especially at the beginning, he saw these folks

01:18PM  5   on a near daily basis.  And towards the end, Judge, that has

01:18PM  6   been cut back a little bit and I think it's because he's

01:18PM  7   starting to do a little better.

01:18PM  8          And so, Judge, I think that is part of the why and

01:18PM  9   part of the will he do it again.  And Judge, I have seven -- I

01:18PM  10  have seven reasons that he's not going to, as I point out,

01:18PM  11  Judge.  And the first of which is for Daniel and maybe it

01:19PM  12  could be arranged, depending on the case, Judge, and depending

01:19PM  13  on the defendant who is sitting in front of you, Judge, but

01:19PM  14  for Daniel, number one, is his remorse.

01:19PM  15         I think there's a heading that says, you know, his

01:19PM  16  remorse is such that he contemplated and tried to commit

01:19PM  17  suicide.  So, I don't bring that up necessarily just because

01:19PM  18  I'm asking for your mercy or your sympathy for Daniel, but I

01:19PM  19  think it demonstrates that he does take this extremely

01:19PM  20  seriously.

01:19PM  21         From day one, from the time that I have met him, he's

01:19PM  22  admitted this conduct.  He's admitted to the agents the minute

01:19PM  23  that they came and raided his house where he was living with

01:19PM  24  his boyfriend.  He went out to Tim Horton's and had coffee and

01:19PM  25  lunch with them and walked them through every single thing in

01:19PM    1    his past because, you know, I think what happens is the guilt

01:20PM    2    and the remorse just came spilling out.  And he has been that

01:20PM    3    way ever since in his interactions, not only with me, but also

01:20PM    4    with the staff.

01:20PM    5         And I think you can find that it's genuine, because

01:20PM    6    he doesn't know that I'm going to get the records and forward

01:20PM    7    them, attach them to my memorandum, records in which he says

01:20PM    8    to the nursing staff eight, ten months ago about how

01:20PM    9    remorseful he is, how guilty he is for having committed the

01:20PM   10    crimes he stands before you convicted of.

01:20PM   11         Judge, the second reason is the microscope.  And he's

01:20PM   12    going to be on supervised release for a long period of time.

01:20PM   13    He's going to be in jail, detention, prison, most likely for a

01:20PM   14    long period of time, so he will be under a microscope for the

01:20PM   15    remainder of his life.  And studies have shown that that

01:20PM   16    microscope, the certainty of being caught, is actually a

01:20PM   17    better deterrent than any kind of prison time.  So, certainly

01:20PM   18    Daniel now knows there is absolutely zero chance that if he

01:21PM   19    ever re-offends in any kind of fashion, he's going to be going

01:21PM   20    back to jail for an extremely long time.

01:21PM   21         Age, Judge, is another big factor for Daniel.  He was

01:21PM   22    22 years old at the time of the offense.  He now stands before

01:21PM   23    you, he's 23 years old.  And studies have shown -- I have

01:21PM   24    probably made the argument before this Court before -- that

01:21PM   25    the cerebral cortex, the part of the brain that is responsible

01:21PM 1   for decision making isn't fully formed, especially in males,

01:21PM 2   until the age of 25.  Of course, that doesn't begin to excuse

01:21PM 3   any kind of conduct, but I think it does demonstrate that by

01:21PM 4   the time he gets released from prison, he's literally going to

01:21PM 5   be a different person.  His brain is literally going to be

01:21PM 6   changed in that time.

01:21PM 7        The single best predictor, Judge, of a successful

01:21PM 8   release is, I think, two-fold.  Number one is family and is he

01:21PM 9   going to have somewhere to go and some support system?  And

01:22PM 10  the letters speak to that.  I won't belabor that point.

01:22PM 11       And I think the other thing is his criminal history.

01:22PM 12  Folks with higher criminal histories tend to recidivate.

01:22PM 13  Folks with lower criminal histories tend not to, to put it

01:22PM 14  simply.  Mr. Villafane-Lozada's criminal history is absolutely

01:22PM 15  zero.  He's a criminal history category I.  He's never been

01:22PM 16  convicted or even charged with anything in his entire life.

01:22PM 17       I talked about the rehab, about how he's been in

01:22PM 18  treatment, really, for this whole time at Niagara County Jail.

01:22PM 19  And that treatment will continue and be more robust in the

01:22PM 20  Bureau of Prisons.  Judge, Daniel is young, he's intelligent.

01:22PM 21  He's not somebody who, when he gets out of prison -- and I can

01:22PM 22  say this with a fair amount of confidence -- I don't think you

01:22PM 23  are going to see Daniel on a supervised release violation.  I

01:22PM 24  don't think you're going to -- Daniel is not going to be the

01:22PM 25  type of person who has no future and who cannot find a life

```
01:22PM   1   for himself.

01:22PM   2        Given his young age, given his intelligence, I am

01:23PM   3   confident that he will have a successful life at some point

01:23PM   4   when he's released from prison.  And, obviously, this all goes

01:23PM   5   to the factors that I think something in the guideline range

01:23PM   6   is not necessary.  It's a heck of a lot of time that these

01:23PM   7   guidelines recommend in cases like this and I am asking for a

01:23PM   8   below guideline sentence for those reasons.

01:23PM   9        And I'd also ask you to consider the collateral

01:23PM  10   consequences of his conviction, of his imprisonment.  Courts

01:23PM  11   have said that these are valid concerns that could be taken

01:23PM  12   into account when considering the 3553(a) factors; the

01:23PM  13   psychological effects of imprisonment, the supervised release,

01:23PM  14   the fact that his liberty is going to be restricted for many,

01:23PM  15   many, many years to come.  And I'd highlight and focus and

01:23PM  16   emphasize, Judge, the psychological effects for Daniel, which

01:23PM  17   are severe, very severe.

01:23PM  18        For those reasons, Judge, I would ask you to consider

01:24PM  19   a below guideline sentence in a case like this, given his age,

01:24PM  20   given his remorse, given the psychological effects and the

01:24PM  21   demonstrated remorse and mental health issues that Daniel has.

01:24PM  22        THE COURT:  All right, sir.  This is your opportunity

01:24PM  23   to say anything you'd like to say.

01:24PM  24        THE DEFENDANT:  I'm sorry.

01:25PM  25        MR. BAGLEY:  Judge, obviously, it's difficult for
```

01:25PM 1    Daniel to speak.  I can kind of physically see the anxiety

01:25PM 2    building in him.  He did write a letter to this Court, Judge,

01:26PM 3    and I'd ask you to consider that.

01:26PM 4              THE COURT:  Anything on behalf of the government?

01:26PM 5              MR. MURRAY:  Your Honor, as stated in the

01:26PM 6    government's response to defendant's sentencing memo, this is

01:26PM 7    not a run-of-the-mill ordinary possession of child pornography

01:26PM 8    case.  The defendant's history and characteristics reveal that

01:26PM 9    he has sexual attraction to minors and that he engaged in

01:26PM 10   sexual contact with minors on numerous occasions throughout

01:26PM 11   his life.

01:26PM 12             THE COURT:  Twice.

01:26PM 13             MR. MURRAY:  On multiple occasions, Your Honor, yes.

01:26PM 14             He stated, during a polygraph examination, his

01:26PM 15   primary sexual interest were minor males approximately eight

01:26PM 16   years old.  He engaged in sexual conduct with a 14-year-old

01:26PM 17   minor male when the defendant was 19 years of age.  He engaged

01:26PM 18   in sexual contact with a 15-year-old minor male when he was 21

01:26PM 19   years old on numerous occasions.  The defendant also admitted,

01:26PM 20   during the polygraph, that at one point, he planned to engage

01:26PM 21   in sexual contact with an eight-year-old male approximately

01:26PM 22   six months before his arrest.

01:26PM 23             But turning to the child pornography itself as well,

01:27PM 24   Your Honor, the defendant possessed images which revealed

01:27PM 25   sexual abuse of toddlers, such as an adult inserting his penis

01:27PM  1   into a three-year-old child's anus.  The defendant's

01:27PM  2   possession of child pornography involving toddlers, in

01:27PM  3   combination with his plan to sexually abuse an eight-year-old

01:27PM  4   child, in combination with him saying that his sexual

01:27PM  5   preference is for eight-year-old children and the fact that he

01:27PM  6   did engage in actual hands-on sexual contact with two

01:27PM  7   identified minor victims that we're aware of, that does, in

01:27PM  8   fact, in the government's position, justify a guideline

01:27PM  9   section, respectively, in the higher end of the range.

01:27PM  10          The defendant -- the government takes the position,

01:27PM  11  respectfully, that he's a serious threat to the safety of the

01:27PM  12  public, minors in the community.  The defendant's actions

01:27PM  13  harmed a number of victims, some of them known, some of them

01:27PM  14  unknown.  And the defendant deserves, respectfully, a just

01:28PM  15  punishment for his actions which provide for adequate

01:28PM  16  deterrence.  And the government submits that a sentence within

01:28PM  17  the higher end of the guideline range, as noted in our

01:28PM  18  response to the sentencing memorandum, is sufficient but not

01:28PM  19  greater than necessary to comply with the factors of 3553(a)

01:28PM  20  in this case.

01:28PM  21          THE COURT:  Well, I have carefully read all the

01:28PM  22  pretrial reports, letters.  I received medical reports and I

01:28PM  23  don't think there's any cases that a judge has for sentencing

01:28PM  24  that are more difficult than cases involving child

01:28PM  25  pornography.  They are certainly up there in the category of

01:28PM    1    the most serious offenses.  And it certainly seems to me that

01:28PM    2    that has to never be forgotten or ignored.  And I certainly,

01:29PM    3    in this case here, there is a lot of information about his

01:29PM    4    activity.

01:29PM    5         Pursuant to the Sentencing Reform Act of 1984, the

01:29PM    6    judgement of the Court is that the defendant is hereby

01:29PM    7    committed to the custody of the Bureau of Prisons to be

01:29PM    8    imprisoned for a period of 120 months.  Cost of incarceration

01:29PM    9    fee is waived.  He shall forfeit his interest in the property

01:29PM   10    specifically set forth in section 7 of the plea agreement

01:29PM   11    incorporated herein.

01:29PM   12         Upon release, he shall be placed on supervised

01:29PM   13    release for a period of 10 years.  He shall report in person

01:29PM   14    to the probation office in the district in which he is

01:29PM   15    released within 72 hours.  He shall comply with the standard

01:29PM   16    conditions of supervised release adopted by the Court.  He

01:29PM   17    shall not commit another federal, state or local crime.  He

01:29PM   18    shall be prohibited from possessing a firearm or other

01:29PM   19    dangerous device.  He shall not possess a controlled

01:29PM   20    substance.  He shall cooperate with the collection of a DNA

01:29PM   21    sample, as required by the Justice For All Act of 2004.

01:29PM   22         Since the instant offense occurred after September

01:30PM   23    1994, but is not related to drug testing (sic), does not have

01:30PM   24    a history of substance abuse problems, the mandatory for drug

01:30PM   25    testing is waived.

01:30PM 1          He shall not use or possess any computer, data

01:30PM 2   storage device or any internet capable device unless the

01:30PM 3   defendant participates in the computer internet monitoring

01:30PM 4   program or unless authorized by the Court or the probation

01:30PM 5   office.

01:30PM 6          He must provide the U.S. Probation Office with

01:30PM 7   advanced notification of any computer or computers, automatic

01:30PM 8   service or services or connected device or devices that will

01:30PM 9   be used during the term of supervision.  The probation officer

01:30PM 10  is authorized to install any application that is necessary to

01:30PM 11  surveil all activity on computer or computers or connected

01:30PM 12  device or devices owned by or operated by the defendant.

01:30PM 13         He shall be required to pay the cost of monitoring

01:30PM 14  services.  The U.S. Probation Office shall be notified by

01:31PM 15  electric -- via electronic transmission of impermissible

01:31PM 16  suspicious activity or communications occurring on such

01:31PM 17  computer or connected device consistent with the computer

01:31PM 18  monitoring policy in effect by the probation office.

01:31PM 19         If triggered by impermissible or suspicious activity,

01:31PM 20  he shall consent to and cooperate with the unannounced

01:31PM 21  examinations of any computer equipment owned or used by the

01:31PM 22  defendant.  Examinations shall include, but are not limited to

01:31PM 23  the retrieval and copying of all the matter from the computer

01:31PM 24  or computers connected to the device or devices, storage media

01:31PM 25  and any internal or external paraphernalia that may involve

01:31PM 1 removal of such equipment for the purpose of conducting a more

01:31PM 2 thorough inspection. Any such monitoring examination is

01:31PM 3 simply designed to avoid, as much as possible, bringing any

01:31PM 4 privileged information or any private material that is not

01:32PM 5 illegal or reasonably likely to lead to illegal material or

01:32PM 6 evidence related to illegal activity.

01:32PM 7 He shall participate in the sex offender specific

01:32PM 8 treatment program and follow the rules and regulations of the

01:32PM 9 program. The probation office will supervise the details of

01:32PM 10 the defendant's participation in a program, including the

01:32PM 11 selection of a provider and schedule. Defendant is not to

01:32PM 12 leave treatment until complete or is ordered by the Court. He

01:32PM 13 shall be required to contribute to the cost of services

01:32PM 14 rendered.

01:32PM 15 He shall not have any deliberate contact with any

01:32PM 16 child under 18 years of age, excluding his biological or

01:32PM 17 adopted children, unless approved by the probation officer or

01:32PM 18 by the Court. He shall not loiter within 100 feet of

01:32PM 19 schoolyards, playgrounds, arcades or other places primarily

01:32PM 20 used by children under the age of 18.

01:32PM 21 The probation office has the discretion to authorize

01:33PM 22 the defendant to pick up his children from school or other

01:33PM 23 functions. However, authorization must be obtained in advance

01:33PM 24 by the probation officer or, alternatively, from the Court.

01:33PM 25 He shall register with the state sex offender registration

01:33PM 1    agency in any state where he resides, is employed, carries out

01:33PM 2    a vocation or is a student and shall provide proof of the

01:33PM 3    registration to the probation officer.

01:33PM 4         The probation office is authorized to release the

01:33PM 5    defendant's presentence report to the New York State Board of

01:33PM 6    Examiners of Sex Offenders.  Further disclosure to the county

01:33PM 7    court and to the parties involved in the determination of the

01:33PM 8    defendant's final classification level is also authorized.

01:33PM 9         Defendant shall submit to a search of his person,

01:33PM 10   property, vehicle, place of residence or any other property

01:33PM 11   under his control, based upon reasonable suspicion and permit

01:33PM 12   the confiscation of any evidence or contraband discovered.

01:34PM 13        He shall submit to a polygraph, computerized voice

01:34PM 14   stress analyzer, or any other such testing, not to exceed

01:34PM 15   twice in a calendar year, in addition of two retests per year

01:34PM 16   as needed.  That testing may include examination using a

01:34PM 17   polygraph, computer voice stress analyzer or similar device to

01:34PM 18   obtain information necessary for supervision of the case

01:34PM 19   monitoring and treatment.

01:34PM 20        The defendant shall answer the questions posed during

01:34PM 21   the examination, subject to defendant's right to challenge, in

01:34PM 22   a court of law, the use of such statements as violations of

01:34PM 23   the defendant's Fifth Amendment rights.  In this regard, he

01:34PM 24   will be deemed not to have waived his Fifth Amendment rights

01:34PM 25   by making any such statements.  He's also -- results of any

01:34PM    1    polygraph pretest and polygraph examinations may be disclosed

01:35PM    2    to the U.S. Probation Office and the Court, but should not be

01:35PM    3    further disclosed without a court order.  The defendant is

01:35PM    4    required to contribute to the costs of services rendered.

01:35PM    5        He shall participate in the mental health treatment

01:35PM    6    program including mental health evaluation and any treatment

01:35PM    7    recommended.  The probation officer will supervise the details

01:35PM    8    of any testing and treatment, including the selection of a

01:35PM    9    provider and schedule if inpatient treatment is recommended,

01:35PM   10    however, it must be approved by the Court unless the defendant

01:35PM   11    consents.  He is not to leave such treatment until completion

01:35PM   12    or is ordered by the Court.

01:35PM   13        While in treatment or taking any psychotropic

01:35PM   14    medication, he shall abstain from the use of alcohol.  He'll

01:35PM   15    be required to contribute to the cost of services rendered.

01:35PM   16    He shall submit to a search of his person, property, vehicle,

01:35PM   17    place of residence or any other property under his control,

01:35PM   18    based upon reasonable suspicion, and permit the confiscation

01:35PM   19    of any evidence or contraband discovered.

01:35PM   20        The Court finds the defendant is indigent and cannot

01:36PM   21    afford the mandatory $5,000 Justice For Victims of Trafficking

01:36PM   22    Act of 2015 assessment.  However, I will order the mandatory

01:36PM   23    special assessment of $100, which is due immediately.  Payment

01:36PM   24    shall begin under the Bureau of Prisons Inmate Financial

01:36PM   25    Responsibility Program.

01:36PM  1    While he is in prison, I will recommend that he be --

01:36PM  2  receive mental health treatment, including a mental health

01:36PM  3  evaluation and any treatment that is determined that he needs

01:36PM  4  while he is incarcerated.

01:36PM  5    The reasons for the sentence.  In determining the

01:36PM  6  sentence, the Court has considered the advisory range and the

01:36PM  7  points raised by counsel and the defendant and I have

01:36PM  8  carefully considered the factors in 18 U.S.C. 3553(a) and find

01:36PM  9  the sentence imposed is sufficient, but not greater than

01:36PM  10  necessary to comply with the purposes of sentencing set forth

01:36PM  11  in 18 U.S.C. 3553(a).  I have given a variance here.  I went

01:37PM  12  to 120 months versus 133 months.  I believe -- I feel, in this

01:37PM  13  case here, I know the government asked for a higher end of the

01:37PM  14  guideline range.  I don't think that's necessary here.

01:37PM  15    He's a young man.  He's -- he has no prior record,

01:37PM  16  appears to be very remorseful.  He admitted his involvement in

01:37PM  17  this activity almost immediately.  He was very candid and the

01:37PM  18  information has been very helpful.  I think the information

01:37PM  19  that has been provided, much of the information he provided

01:37PM  20  during the polygraph, which is kind of unusual for somebody to

01:37PM  21  go through a polygraph examination.

01:37PM  22    But the information that the government's alluded to

01:37PM  23  and that the Court is aware of that's in the report came from

01:37PM  24  him directly.  And I feel that that is very, very important,

01:37PM  25  particularly in the event that mental health treatment is

01:37PM  1   necessary.  I do not like to hold that information against an

01:38PM  2   individual.  I feel it's more helpful, for purposes of

01:38PM  3   rehabilitation and treatment, and will go a long way in

01:38PM  4   helping him deal with these demons that he has to deal with,

01:38PM  5   which I think is very, very unfortunate.  And the fact that he

01:38PM  6   did that, I feel that a sentence a little below the guideline

01:38PM  7   range is a fair and reasonable sentence.

01:38PM  8          You have a right to appeal the sentence, sir, if you

01:38PM  9   feel the Court misapprehended its authority or imposed an

01:38PM  10  illegal sentence.  However, you did waive your right to

01:38PM  11  appeal.  If you feel that waiver is not a valid waiver, you

01:38PM  12  may take that issue before the Second Circuit Court of

01:38PM  13  Appeals.  Anything further?

01:38PM  14         MR. MURRAY:  Your Honor, just as far as the

01:38PM  15  forfeiture is concerned, as contained in the forfeiture

01:38PM  16  section of the plea agreement and the preliminary order of

01:38PM  17  forfeiture, the identified assets will be forfeited to the

01:38PM  18  United States with the final Order of Forfeiture.

01:39PM  19         THE COURT:  Is there an order somewhere?

01:39PM  20         MR. MURRAY:  Yes, Your Honor.

01:39PM  21         THE COURT:  Do I have it here?

01:39PM  22         Denise, do I have the order?

01:39PM  23         THE CLERK:  They usually send it after sentencing.

01:39PM  24         THE COURT:  Provide the order to me and I'll sign it.

01:39PM  25         MR. MURRAY:  Yes, Your Honor.  Thank you.  With that,

01:39PM    1    the government would dismiss the open counts in the

01:39PM    2    indictment, Counts 1 and 3 of the indictment.

01:39PM    3            THE COURT:  Counts what?

01:39PM    4            MR. MURRAY:  One and three.

01:39PM    5            THE COURT:  All right.  He pleaded guilty to Count 2?

01:39PM    6            MR. MURRAY:  That's correct, Your Honor.

01:39PM    7            THE COURT:  Okay.  Motion is granted.

01:39PM    8            MR. MURRAY:  Thank you.

01:39PM    9            MR. BAGLEY:  Judge, I'm sorry.  If I may, can I be

01:39PM   10    heard on one thing?  I do -- as you know, Judge, it's the

01:39PM   11    conditions are kind of a hot topic in the Second Circuit.  I

01:39PM   12    know there's a few issues that are pending on appeal.  So,

01:39PM   13    just to preserve the record, I would just like to note an

01:39PM   14    objection to a few of the conditions of supervision.

01:39PM   15            THE COURT:  Such as?

01:39PM   16            MR. BAGLEY:  So, I have four, Judge, that I'd like to

01:39PM   17    note; the sex offender treatment.  Judge, we're objecting to

01:40PM   18    that, specifically on the basis of it being unnecessarily

01:40PM   19    vague in the sense that the probation officer supervises the

01:40PM   20    details of the supervision.  And Judge, I'm sorry, this comes

01:40PM   21    from the appeal unit, so please don't hold me personally

01:40PM   22    responsible for this.  So, the objection there, Judge, is

01:40PM   23    apparently in other cases, probation officers have sat in on

01:40PM   24    treatment.  And we think that that, you know, impairs the

01:40PM   25    ability of the treatment that, you know, the client to be

01:40PM 1 candid during treatment. And because it's kind of vague, we'd

01:40PM 2 object to it on that basis.

01:40PM 3            THE COURT: All right. That objection is noted.

01:40PM 4            MR. BAGLEY: Thank you, Judge. I do have a few

01:40PM 5 others, Judge. I'm sorry. I can list them if you want and I

01:40PM 6 won't explain them necessarily.

01:40PM 7            THE COURT: All right.

01:40PM 8            MR. BAGLEY: So, the computer internet, the fact that

01:40PM 9 Mr. Villafane-Lozada was required to pay the entire cost of

01:41PM 10 it. He's indigent and that could infringe on his First

01:41PM 11 Amendment rights. The computer internet monitoring program is

01:41PM 12 what I'm speaking of, Judge.

01:41PM 13            Then the notification of risk, Judge, is a now a new

01:41PM 14 standard condition. We'd argue that that still improperly

01:41PM 15 delegates power to probation.

01:41PM 16            And finally, the polygraph provision, Judge. Not

01:41PM 17 exactly the polygraph, but the part in the polygraph that

01:41PM 18 allows probation to use the voice stress analyzer and then the

01:41PM 19 next section says or any similar device, Judge. So, we'd

01:41PM 20 object to that.

01:41PM 21            THE COURT: All right. Objection is noted. Court

01:41PM 22 will be in recess.

01:41PM 23            THE CLERK: All rise.

01:42PM 24 (Proceedings ended at 1:42 p.m.)

25

1          *     *     *     *     *     *     *

2

3          I certify that the foregoing is a

4 correct transcription of the proceedings

5 recorded by me in this matter.

6

7

8

9                   s/ Megan E. Pelka, RPR

10                   Court Reporter,

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25